SIXTH DIVISION

April 30, 2004

No. 1-02-2257

BRAD D. BUNTING, Individually and on Behalf of All Others Similarly Situated,

Plaintiff-Appellant,

v.

THE PROGRESSIVE CORPORATION, PROGRESSIVE MICHIGAN INSURANCE COMPANY, and CCC INFORMATION SERVICES, INC.,

Defendants-Appellees.

))))))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Robert V. Boharic

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff, Brad D. Bunting, brings this class action on behalf of himself and a putative class consisting of all persons similarly situated.  In his second amended complaint, plaintiff alleged that defendants, The Progressive Corporation and Progressive Michigan Insurance Company (collectively referred to as Progressive), committed widespread consumer fraud and breach of contract in connection with a purported company-wide, systematic pattern and practice of denying Progressive's insureds the full recovery due to them under their contracts of insurance by failing to pay the actual cash value for their vehicles when they were declared to be total losses.  Plaintiff further alleged that Progressive committed these acts through the use of fraudulent valuations of the vehicles prepared by defendant CCC Information Services, Inc.  The trial court dismissed all counts of plaintiff's complaint.  Plaintiff now appeals.

BACKGROUND

Progressive Michigan Insurance Company issued an automobile insurance policy to plaintiff, a resident of the State of Michigan.  Plaintiff's insurance policy provided, in relevant part, that in the event of a total loss of his vehicle, he would be paid the vehicle's “actual cash value,” reduced by the applicable deductible.  On or about March 21, 2000, plaintiff was involved in an automobile accident while driving his 1990 Ford Taurus.  Plaintiff notified Progressive 
Michigan Insurance Company,
 which deemed the vehicle a total loss.  
Progressive 
Michigan Insurance Company, t
o assist it in determining how much to pay plaintiff,
 used CCC Information Services, Inc. (CCC), an Illinois corporation and provider of total-loss valuation services.  Based upon CCC's valuation report, Progressive proposed to pay plaintiff $4,025.  Plaintiff disputed the amount, claiming that it was too low.  A second evaluation was done by CCC and, based upon that reevaluation, Progressive offered plaintiff $4,236.  Plaintiff disputed this figure as well.  Eventually, the parties invoked the appraisal provision of the policy, which states as follows:

“If we cannot agree with you on the amount of a loss, then we or you may demand an appraisal of the loss.  If so, each party shall appoint a competent and impartial appraiser.  The appraisers will determine the amount of the loss.  If they fail to agree, the disagreement will be submitted to a qualified and impartial umpire chosen by the appraisers.  The amount of loss agreed to by any two will be binding.  You will pay your appraiser's fees and expenses.  We will pay our appraiser's fees and expenses.  Payment of the umpire and all other expenses of the appraisal will be shared equally between us and you.  Neither we nor you waive any rights under this policy by agreeing to an appraisal.”

Plaintiff, however, was also sent a check in the amount of $4,236, which he accepted and negotiated.  A third appraiser was never appointed and Progressive's appraiser agreed on $4,950 as the amount of loss.  Plaintiff was sent a check for the difference plus license transfer fees and taxes (making the total $5,266).

Plaintiff did not seek to vacate the appraisal award.  Almost four months after his total-loss claim was settled, plaintiff moved for leave to join the instant case, which initially had been filed on behalf of then-plaintiff Megan Stephens, a resident of Oregon.  Ms. Stephens had filed this action on October 28, 1999, against Progressive Corporation, former defendant Progressive Preferred Insurance Company (the company that issued Ms. Stephens' policy) and CCC.  In January 2000, defendants filed motions to dismiss Ms. Stephens' claims and/or to compel appraisal.  On September 14, 2000, Ms. Stephens was granted leave to file a first amended complaint adding plaintiff.  Thereafter, pursuant to sections 2
–
615 and 2
–
619 of the Code of Civil Procedure (735 ILCS 5/2
–
615, 2
–
619 (West 2002)), all defendants filed motions to dismiss the first amended complaint and/or to compel appraisal with respect to the claims of both plaintiffs.

On April 19, 2001, the circuit court granted defendants' section 2
–
615 motions, identified several pleading deficiencies and struck plaintiffs' first amended complaint.  The court noted that plaintiff had failed to name, as a defendant, the entity that had issued plaintiff Bunting's policy, Progressive Michigan Insurance Company.  The court concluded that the first amended complaint failed to allege how plaintiffs had been damaged.  The court also found that plaintiffs had failed to plead any allegations showing how the parent corporation, Progressive, could be liable for the acts of its subsidiaries.  As to plaintiff Stephens, the trial court required her to submit to the appraisal process set forth in her insurance policy.  The court also ordered plaintiff to file a second amended complaint after the appraisal process had been completed and to plead with specificity the facts surrounding the appraisals of both plaintiffs.  Plaintiff Stephens and then-defendant Progressive Preferred proceeded to appraisal.  The umpire determined that the actual cash value of the vehicle was $14,250 and Progressive Preferred paid Ms. Stephens $15,000.  After the appraisal process was completed, Ms. Stephens voluntarily dismissed her claims.

On November 1, 2001, a second amended complaint was filed on behalf of plaintiff Bunting alone against Progressive Corporation, CCC, and a new defendant, Progressive Michigan Insurance Company.  The second amended complaint contained five counts in which plaintiff alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et seq
. (West 2000), breach of contract, common law fraud, and intentional interference with contract.

In December 2001, Progressive Corporation and CCC filed motions to dismiss plaintiff's second amended complaint, which the circuit court took under advisement.  Plaintiff did not serve Progressive Michigan Insurance Company with the second amended complaint until June 2002.  On June 18, 2002, Progressive Michigan Insurance Company filed a motion to quash for lack of personal jurisdiction.  That motion was never heard or ruled upon by the trial court because, on June 28, 2002, the trial court granted the other defendants' motions to dismiss and dismissed plaintiff's claims with prejudice.

The circuit court articulated several grounds as the bases for its dismissal with prejudice of plaintiff's second amended complaint.  The trial court first addressed the section 2
–
619
 (735 ILCS 5/2-619) (West 2002))
 bases of defendants' motions to dismiss.  The trial court determined that the Federal Arbitration Act (FAA) (9 U.S.C. §1 
et seq
. 2000) applied to plaintiff's claims because the appraisal provision in Progressive's policy constitutes an arbitration.  The court concluded, therefore, that plaintiff's complaint should be dismissed because plaintiff failed to give the requisite notice to vacate the arbitration award within the three-month period required by the FAA.  The court also concluded that plaintiff's complaint should be dismissed because there had been an accord and satisfaction.  The trial court also concluded that, pursuant to section 2
–
615 of the Code of Civil Procedure (735 ILCS 5/2
–
615 (West 2002)), each and every count of plaintiff's second amended complaint failed to state a cause of action.

STANDARD OF REVIEW

Our review of motions to dismiss brought under both section 2
–
615 and section 2
–
619 is 
de novo. Edelman, Combs & Latturner v. Hinshaw & Culbertson
, 338 Ill. App. 3d 156, 164, 788 N.E.2d 740, 747-48 (2003).
  A reviewing court may affirm a correct dismissal for any reason appearing in the record. 
Nielsen-Massey Vanillas, Inc. v. City of Waukegan
, 276 Ill. App. 3d 146, 151, 657 N.E.2d 1201, 1205 (1995).

SECTION 2
–
615 MOTIONS

A motion to dismiss brought 
pursuant to section 2
–
615 attacks the legal sufficiency of the complaint by alleging defects on the face of the complaint. 
Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.
, 186 Ill. 2d  472, 491, 713 N.E.2d 543, 552 (1999).  In deciding whether a complaint states a cause of action 
for purposes of a section 2
–
615 motion to dismiss
, we must view the allegations in the light most favorable to the plaintiff and accept as true all well-pleaded facts and all reasonable inferences derived therefrom. 
Oliveira v. Amoco Oil Co.
, 201 Ill. 2d 134, 147, 776 N.E.2d 151, 159 (2002).   

COUNT I
 –
 CONSUMER FRAUD

The Illinois Consumer Fraud and Deceptive Business Practices Act (the Act) 
(815 ILCS 505/1 
et seq
. (West 2000)
 states, in pertinent part, as follows:

“Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', * * * in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.  In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.” 815 ILCS 505/2 (West 2000).

Section 10a(a) of the Act authorizes private causes of action for deceptive business practices proscribed under the Act. 815 ILCS 505/10a(a)(West 2000).   

In count I of plaintiff's second amended complaint, he alleges consumer fraud against all defendants on behalf of the class.
  Plaintiff argues that the trial court erred in dismissing count I.
  
In the trial court, plaintiff acknowledged that he had no valid consumer fraud claim against Progressive, but claimed that he was entitled to bring such a claim against Progressive on behalf of the putative, uncertified class.  The trial court correctly rejected this argument.  The Illinois Supreme Court has made it very clear that where, as here, a putative class representative has no valid claim in his own right, he cannot bring such a claim on behalf of a putative class. 
Portwood v. Ford Motor Co.
, 183 Ill. 2d  459, 467 n.1, 701 N.E.2d 1102, 1105 n.1 (1998); 
Landesman v. General Motors Corp.
, 72 Ill. 2d 44, 377 N.E.2d 813 (1978).  Thus, the trial court correctly dismissed count I of plaintiff's second amended complaint against Progressive.  Plaintiff has apparently abandoned his consumer fraud claim against Progressive in that he has not raised it as an issue in this appeal.  Supreme Court Rule 341(e)(7) provides that “[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.” 188 Ill. 2d  R. 341(e)(7).  Thus, plaintiff has forfeited any consumer fraud claim against Progressive and we will not consider it.

Plaintiff contends on appeal 
that he has a valid cause of action against CCC
, however, 
because the Act applies to CCC's conduct
.  
CCC argues that the Act does not apply to non-Illinois consumers such as plaintiff.
  Thus, we must address whether plaintiff, a nonresident of Illinois, has standing to
 bring a claim under the Act.

In order to adequately state a private cause of action under the Act, a plaintiff must allege the following elements: (1) a deceptive act or practice by the defendant;  (2) the defendant's intent that the plaintiff rely on the deception;  (3) the occurrence of the deception in the course of conduct involving trade and commerce; (4) actual damage to the plaintiff; and (5) the violation of the Act proximately caused the damage. 
Oliveira v. Amoco Oil Co.
, 201 Ill. 2d  134, 149, 776 N.E.2d 151, 160 (2002); 
Weis v. State Farm Mutual Automobile Insurance Co.
 333 Ill. App. 3d  402, 408, 776 N.E.2d 309, 313 (2002)
. 

The Illinois Supreme Court has not directly ruled on the issue of whether a nonresident has standing 
to
 bring a claim under the Act, but the court has addressed related issues
 in cases involving class actions where the class included nonresident plaintiffs.  The parties, to support their respective positions as to whether the Act applies to nonresident plaintiffs,
 have relied on language from different cases of our supreme court
.

CCC relies heavily on the Illinois Supreme Court's statement that the Act's purpose is “to protect 
Illinois
 consumers, borrowers, and businessmen.” (Emphasis added.) 
Scott v. Ass'n for Childbirth at Home, International
, 88 Ill. 2d 279, 288, 430 N.E.2d 1012, 1017 (1981).  This statement, however, was made in 
dictum
 and was paraphrasing the preamble of the Act, which refers to “consumers,” and not “Illinois consumers.”

CCC also contends that plaintiff has failed to establish the third element of a private cause of action under the Act because the alleged violations did not occur in the course of conduct involving “trade and commerce.”  
As CCC notes, the Act defines the terms “trade” and “commerce”
 as follows:

“the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting 
the people of this State
.” (Emphasis added.) 815 ILCS 505/1(f)(West 2000).

Thus, CCC argues, plaintiff cannot state a cause of action because he is not a resident of Illinois.

Plaintiff notes that 
in 
Miner v. Gillette Co.
, 87 Ill. 2d 7, 428 N.E.2d 478 (1981), a class action case that included a count based on the Act, the Illinois Supreme Court upheld the certification of a class that included nonresidents of Illinois.  The issue before the 
Miner
 court was whether an 
Illinois
 plaintiff could maintain a multistate class action in Illinois.  There was no issue concerning the named plaintiff's individual standing.  Rather, 
the 
Miner
 court addressed the due process
 concern of whether an Illinois court had jurisdiction to render a binding judgment 
over nonresident plaintiffs who may lack “minimum contacts” with Illinois in a class action suit. 
Miner
, 87 Ill. 2d at 11-16, 428 N.E.2d at 480-83.

In 
Miner
, the appellate court had affirmed the trial court's dismissal of the action as to non-Illinois members on the basis that the non-Illinois resident class members had failed to demonstrate that 
both
 a common question of fact 
and
 a common question of law predominated. 
Miner
, 87 Ill. 2d at 17, 428 N.E.2d at 83.
  Our supreme court reversed that decision and held that class certification is appropriate as long as the plaintiffs demonstrate 
either
 a common question of fact 
or
 a common question of law that predominates over individual issues.
 Miner
, 87 Ill. 2d at 17, 428 N.E.2d at 83
.

The
 
Miner
 court was not directly considering the issue of whether the Act applied to nonresident consumers.  
The court in no way suggested that the Act could or would govern the claims of the non-Illinois resident class members.  Quite the contrary, the 
Miner
 court expressly stated that “[
u
]
nlike in the class of nonresidents
, the Illinois class also has a common question of law, that is, 
the law of Illinois
, so that there is no possibility that different questions of law will predominate.” (Emphasis added.) 
Miner
, 87 Ill. 2d at 19, 428 N.E.2d at 484-8
5.  We agree with CCC that, far from supporting plaintiff's argument, 
Miner
 suggests that the claims of non-Illinois consumers should be governed by the law of their own states.  Thus, we do not believe that 
Miner
 supports plaintiff's argument.

On the other hand, i
n 
Martin v. Heinold Commodities, Inc.
, 117 Ill. 2d  67, 510 N.E.2d 840 (1987)
, the Illinois Supreme Court considered the issue of certification of a class action under the Act, brought by an Oklahoma resident, but which included a plaintiff class consisting of both residents and nonresidents of Illinois.  
The 
Martin
 court acknowledged that the appellate court below it had relied on 
Miner
 when it decided that the trial court's certification of the class should be reconsidered.
  The 
Martin
 court 
noted that the 
Miner
 court “assumed, but did not decide, that the substantive law of the States whose residents were members of the class might govern the issue of liability as to their residents.” 
Martin
, 117 Ill. 2d at 81, 510 N.E.2d at 846.

The 
Martin
 court distinguished 
Miner
 and decided that, in the case before it, “Illinois substantive law [could] be applied to resolve the underlying common factual dispute.” 
Martin
, 117 Ill. 2d at 82, 510 N.E.2d at 847.
  Although the 
Martin
 court did not directly address the application of the Act to nonresidents,
 it did conclude that
 a common allegation of each member of the plaintiff class “implicate[d] the legitimate interests of the State of Illinois in insuring that persons and entities within its jurisdiction, insofar as they undertake to act as agents, do so in accordance with its law.” 
Martin
, 117 Ill. 2d at 82, 510 N.E.2d at 846.
  The 
Martin
 court relied upon 
Phillips Petroleum Co. v. Shutts
, 472 U.S. 797, 821-22, 86 L. Ed. 2d 628, 648, 
105 S. Ct. 2965, 2980 (1985
), and concluded that Illinois had significant contacts to the claims asserted by each class member. 
Martin
, 117 Ill. 2d at 82, 510 N.E.2d at 846-47.
  
The court, however, based this decision on the following factors: (1) the contracts containing the allegedly deceptive statements were all executed in Illinois; (2) the contracts contained express choice-of-law and forum-selection clauses specifying that any litigation would be conducted in Illinois under Illinois law; and (3) complaints regarding the defendant's performance were to be directed to its Chicago office. 
Martin
, 117 Ill. 2d at 82-83, 510 N.E.2d at 847.

In our appellate court, there is a split of authority on the issue of whether the Act applies to nonresidents.  In 
Prime Leasing, Inc. v. Kendig
, 332 Ill. App. 3d 300, 313, 773 N.E.2d 84, 96 (2002), this district, citing a Fourth District case, 
Oliveira v. Amoco Oil Co.
, 311 Ill. App. 3d  886, 897, 726 N.E.2d 51 (2000),
 vacated in part & rev'd on other grounds
, 201 Ill. 2d 134, 776 N.E.2d 151 (2002), stated that  the Act normally does not apply to out-of-state consumers.  More recently, two cases 
–
 both in the Fifth District 
–
 have ruled that the Act does not limit its application to resident consumers where the deceptive acts and practices were perpetrated in Illinois by a resident defendant.
 Clark v. TAP Pharmaceutical Products, Inc.
, 343 Ill. App 3d 538, 798 N.E.2d 123 (2003); 
Avery v. State Farm Mutual Automobile Insurance Co.
, 321 Ill. App. 3d  269, 746 N.E.2d 1242 (2001), 
appeal allowed
, 201 Ill. 2d 560, 786 N.E.2d 180 (2002).

Several federal district courts have attempted to divine how the Illinois Supreme Court would rule, but a split of authority resulted.  One line of cases concludes that the court would not apply the Act to nonresident consumers. See 
Hastings v. Fidelity Mortgage Decisions Corp.
, 984 F. Supp. 600, 615 (N.D. Ill. 1997); 
Rohlfing v. Manor Care, Inc.
, 172 F.R.D. 330, 340 (N.D. Ill.1997) (“where the only connection with Illinois is the headquarters of one defendant, we conclude that the [Act] does not apply to the claims of the non-Illinois plaintiffs even under the broad application of the [Act] endorsed by 
Martin
 and other similar cases); 
Swartz v. Schaub
, 818 F. Supp. 1214, 1214 (N.D. Ill. 1993); 
Seaboard Seed Co. v. Bemis Co.
, 632 F. Supp. 1133, 1140 (N.D. Ill. 1986).
  Some of these cases have ignored 
Martin
 and construed the Act's language “shall include any trade or commerce directly or indirectly affecting 
the people of this State
” to limit the reach of the Act's protection; others have distinguished 
Martin
.  
Another line of cases holds that the Illinois Supreme Court would apply the Act to nonresident consumers. See 
Tylka v. Gerber Products, Co.
, 182 F.R.D. 573, 576 (N.D. Ill. 1998) (holding that, in accordance with the Act's liberal-application directive, nonresident consumers who purchased allegedly misrepresented items in Illinois had standing to sue under the Act and were members of the class); 
Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.
, 204 F. Supp. 2d 1120, 1123 (N.D. Ill. 2002) (concluding that nonresident plaintiff had standing to sue under the Act because it was a consumer of Illinois products and services); 
Garner v. Healy
, 184 F.R.D. 598, 604 (N.D. Ill. 1999) (deciding that, with respect to standing under the Act, any Illinois consumers, or any nonresident consumers, who purchased the allegedly misrepresented products that were marketed in Illinois within the relevant time period have standing to sue); 
MAN Roland Inc. v. Quantum Color Corp
., 57 F. Supp. 2d 568, 575 (N.D. Ill. 1999) (finding that, in view of the Act's liberal application directive, courts that interpreted the Act to extend standing only to consumers who are Illinois residents construed the Act too narrowly); 
Nichols Motorcycle Supply, Inc. v. Dunlop Tire Corp.
, 913 F. Supp. 1088, 1140 (N.D. Ill. 1995) (vacated pursuant to settlement); 
Fry v. UAL Corp.
, 136 F.R.D. 626, 637 (N.D. Ill. 1991) (rejecting argument that the Act only applies to Illinois consumers).

CCC now contends that the Act does not apply to nonresident consumers and urges us to follow 
Prime Leasing
.  The statement in 
Prime Leasing
, however, was 
dictum
.  After concluding that one of the plaintiffs was not a consumer as defined by the Act, the court stated that “even if [the plaintiff] were to be considered a consumer, the Act normally does not apply to out-of-state consumers.” 
Prime Leasing
, 332 Ill. App. at 313, 773 N.E.2d at 96.  The court did not discuss the matter further.  Moreover, the court relied on the case of 
Oliveira v. Amoco Oil Co.
, 311 Ill. App. 3d  886, 897, 726 N.E.2d 51 (2000), 
vacated in part & rev'd. on other grounds
, 201 Ill. 2d  134, 776 N.E.2d 151 (2002).  Although the 
Prime Leasing
 court acknowledged that the appellate court opinion in 
Oliveira
 had
 
been reversed on other grounds, it nevertheless cited to the 
vacated 
portion of the appellate court opinion. See 
Oliveira v. Amoco Oil Co.
, 201 Ill. 2d 134, 157, 776 N.E.2d 151 (2002) (“[W]e express no opinion on the appropriateness of class certification in this case.  We also vacate those portions of the circuit and appellate court judgments which addressed the issue of class certification”).

In
 
Avery
, the Fifth District court based its decision that the Act applied to nonresident plaintiffs on the more liberal construction of the Act.
  
The 
Avery
 court stated that “[t]o deny an out-of-state plaintiff a remedy against a resident of Illinois would violate the legislative directive that the [Act] be liberally construed to achieve its remedial purposes.”
 
Avery
, 321 Ill. App. 3d at 281, 746 N.E.2d at 1254.
  
Avery
 was recently cited with approval by a Second District court in 
P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.
,
 345 Ill. App. 3d 992, 803 N.E.2d 1020 (2004) (“
that some class members reside outside Illinois or that the laws of different states may apply to the transactions at issue does not ordinarily prevent certification of the class”).
  As we have noted earlier, 
Avery
 is currently under advisement by the supreme court and any opinion we issue may be superseded.
  Nonetheless, we believe that, consistent with 
Martin
, a nonresident plaintiff has standing to bring a private cause of action under the Act where Illinois has sufficient contacts to plaintiff's claim.

Considering the allegations in plaintiff's second amended complaint, which we must accept as true for purposes of our review, Illinois has sufficient contacts to plaintiff's claim against CCC.  A reasonable inference may be drawn from plaintiff's allegations that CCC's purported policy and practice of intentionally undervaluing vehicles in its valuation reports in order to obtain more insurance company business was designed and implemented by CCC at its principal office in Illinois.  As a result, it may be shown that the allegedly deceptive practices were perpetrated in Illinois.  We reject CCC's argument that the Act is inapplicable because plaintiff is a nonresident.

CCC also contends that, because plaintiff has received the actual cash value of his car, he cannot allege that he sustained any actual injury, as required under the Act.  Plaintiff's second amended complaint, however, includes allegations that he was further damaged by "the unnecessary expense of $350 that he incurred in paying his appraiser."  Thus, plaintiff has adequately alleged actual damages.

In sum, because we conclude that plaintiff adequately stated a cause of action under the Act, the trial court incorrectly granted CCC's section 2-615 motion to dismiss count I of plaintiff's second amended complaint.  We reverse the trial court's decision to dismiss count I of plaintiff's second amended complaint against CCC, insofar as it was based on section 2-615.  We shall consider CCC's section 2-619 motion to dismiss later in this opinion.  We also affirm the trial court's decision to dismiss count I of plaintiff's second amended complaint against Progressive.

COUNT II 
– 
BREACH OF CONTRACT

In count II of plaintiff's second amended complaint, plaintiff alleges breach of contract against Progressive.  Plaintiff continued to allege, among other claims, that he was not paid the actual cash value of his vehicle.  To state a cause of action for breach of contract in Michigan, a plaintiff must show (1) a valid, enforceable contract; (2) defendant's breach; and (3) damages resulting from that breach.  In Michigan, a breach occurs when one party refuses to perform (
Carpenter v. Smith
, 147 Mich. App. 560, 564-65, 383 N.W.2d 248, 250 (1985)), or where the performance does not conform to the contract's requirements (
Woody v. Tamer
, 158 Mich. App. 764, 772, 405 N.W.2d 213, 217 (1987)).  The trial court determined that plaintiff's second amended complaint failed to state a cause of action because plaintiff would not be able to show a breach by Progressive.

Under the policy, Progressive had two contractual obligations relevant here: (1) in the event of a collision causing a total loss to an insured's vehicle, to pay the vehicle's “actual cash value” and (2) in the event of a dispute with the insured over the vehicle's value, to pay the “actual cash value” as determined by the appraisal process.  The trial court concluded that because Progressive paid the full amount of the “actual cash value” of plaintiff's vehicle as determined by the appraisal process, there was no breach of contract.

The court additionally concluded that there was no breach regarding the appraisal process.  The policy states, “[T]he appraisers will determine the amount of loss.  If they fail to agree, the disagreement will be submitted to a qualified and impartial umpire chosen by the appraisers.  The amount of loss agreed to by any two will be binding.” When plaintiff voluntarily entered into the contract with Progressive, the parties agreed to settle this type of dispute using the appraisal process in the policy.  The process has been completed, and the sum due has been tendered and accepted by plaintiff.  Thus, the trial court determined that Progressive has performed all of its obligations under the Policy.

Plaintiff does not dispute that Progressive's contractual obligation was to pay the actual cash value of the vehicle as determined by the appraisal process.  Nor does plaintiff dispute that Progressive complied with that contractual obligation.  Plaintiff contends that the breach of contract predates the appraisal process.  Plaintiff asserts that Progressive had a contractual duty to initially “offer” the actual cash value of the vehicle.  He claims that Progressive entered into its contract with plaintiff 
with the intent
 to intentionally offer far below the actual cash value of the vehicle in the event of a total loss, thus forcing the insured to either accept the amount or engage in a costly appraisal practice.  This, plaintiff asserts, was a breach of the duty of good faith and fair dealing present in every contract.

The trial court stated:

 “[T]his argument seems to hinge on the fact that [Progressive's] appraisal was lower than [plaintiff's] appraisal.  In actuality, this is simply a disagreement over the term 'actual cash value.' [Progressive] can just as easily claim that plaintiff's appraisal was far above actual cash value.  Thus, this is just a difference in opinion by the two appraisers as to what is the actual cash value.”

It is unclear from the trial court's analysis whether it was concluding that plaintiff's allegations were conclusory or whether the trial court was weighing facts.  In any event, we do not believe the trial court addressed plaintiff's contention that defendant breached its duty of good faith.

Contrary to Progressive's assertion, plaintiff is not impermissibly pleading an independent cause of action for the 
tort
 of bad faith breach of an insurance contract, which both parties acknowledge is not recognized by Michigan courts.  Nonetheless, we conclude that plaintiff has failed to state a cause of action for breach of the implied covenant of good faith and fair dealing that plaintiff contends is implied in 
every
 contract.

An implied covenant of good faith and fair dealing in the performance of contracts is recognized under Michigan law 
only
 where one party to the contract makes its performance a matter of its own discretion. 
Stephenson v. Allstate Insurance Co.
, 328 F.3d 822, 826 (6th Cir. 2003) (applying Michigan law);
 
Hubbard Chevrolet Co. v. General Motors Corp.
, 873 F.2d 873, 876 (5th Cir. 1989) (applying Michigan law); 
James v. Whirlpool Corp.
, 806 F. Supp. 835 (E.D. Mo. 1992) (applying Michigan law).  Here, Progressive's manner of performance was not discretionary.  The policy clearly described Progressive's payment obligations.  These obligations were not discretionary.  Any initial discretion in offering or estimating the actual cash value of plaintiff's vehicle did not affect defendant's performance of the contract.  Progressive's performance of its contractual obligation to pay the actual cash value of the vehicle and, in the event of a dispute with the insured over the vehicle's value, to pay the “actual cash value” as determined by the appraisal process was not a matter of its own discretion.  Plaintiff has failed to state a cause of action for breach of contract.

COUNT III 
–
 COMMON LAW FRAUD

Plaintiff alleged common law fraud against all defendants.  As Progressive correctly notes in its argument that any intentional misrepresentation was irrelevant to a breach of contract claim, plaintiff's fraud claims rise or fall on their own merits.  We now address the fraud that has been alleged here.  As the trial court noted, plaintiff has attempted to allege fraud in the inducement as well as fraud.  We shall address these theories separately. 

To prove common law fraud under Michigan law, a plaintiff must allege the following elements: (1) a material representation made by the defendant; (2) its falsity; (3) defendant's knowledge of its falsity or reckless disregard for its truth or falsity; (4) defendant's intent that plaintiff rely on the misrepresentation; (5) plaintiff's actual reliance on the misrepresentation; and  (6) that plaintiff suffered damages. 
Jim-Bob, Inc
.
 v. Mehling
, 178 Mich. App. 71, 89-90, 443 N.W.2d 451, 459 (1989).

The trial court concluded, and we agree, that plaintiff failed to state a cause of action for common law fraud, because he could not allege the fourth element of reliance.  Plaintiff's fraud claim is predicated on his allegation that the CCC valuation used by Progressive misrepresented the actual cash value of his vehicle.  As the trial court correctly found, however, plaintiff's own complaint defeated any claim of reliance.  Plaintiff rejected the appraisal.  As the trial court noted, a fraud is not actionable under Michigan law unless relied upon by the plaintiff.  
Phillips v. Smeekens
, 50 Mich. App. 693, 697, 213 N.W.2d 862, 864 (1973).

The trial court also addressed plaintiff's claim of fraud in the inducement.  The trial court noted that it was 
during oral argument on the motions to dismiss
 that plaintiff pointed out that he was also alleging fraud in the inducement.  Michigan courts recognize a cause of action for fraud in the inducement. See 
Samuel D. Begola Services, Inc
.
 v Wild Brothers
, 210 Mich. App. 636, 534 N.W.2d 217 (1995).  In 
Begola
, the court stated: “Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon. [Citations.]  Fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party. [Citations.]” 
Begola
, 210 Mich. App. at 639-40; 534 N.W.2d at 219.  At no time did plaintiff attempt to rescind the contract.  Michigan courts have explained that where a party does not seek to rescind a contract on the basis of a claim of fraud in the inducement, the party affirms the contract.  
Hubbell, Roth & Clark, Inc. v. Jay Dee Contractors, Inc.
, 249 Mich. App. 288, 295, 642 N.W.2d 700, 704 (2001).

Plaintiff's second amended complaint does make some allegations that sound in fraud in the inducement.  In paragraph 23 of his second amended complaint, plaintiff alleges:

“At the time plaintiff and class members purchased their policy, however, Progressive intentionally failed to inform them that it had an undisclosed policy and pattern of valuing the total loss of a vehicle at less than actual cash value of the vehicle based in whole or in part on knowingly biased below actual cash value valuation reports issued by defendant CCC.”

In paragraph 31, plaintiff alleges:

“Progressive and the Subsidiaries did not disclose to plaintiff or class members prior to their purchase of insurance policies that they would use 
[
sic
]
 intentionally pay less than actual cash value and do so based upon below actual cash value CCC valuation reports in the event that a vehicle was determined to be a total loss.”

Despite these allegations, the trial court concluded that, as with his other fraud claim, plaintiff failed to plead actual reliance with respect to his fraud-in-the-inducement claim.  Plaintiff now asserts that the trial court misapprehended these allegations.  Plaintiff is incorrect.  It is plaintiff who misapprehends the cause of action, under Michigan law, for fraud in the inducement.  As the trial court correctly determined, “in order for this legal theory to have any merit, plaintiff must allege that he 
actually
 relied upon a misrepresentation about the appraisal process when he 
entered into
 the contract.”(Emphasis in original.)  Because plaintiff failed to plead this element, he failed to state a cause of action for fraud in the inducement.  Thus, the trial court's decision dismissing plaintiff's common law fraud claim, pursuant to section 2
–
615, was correct. 

COUNT IV 
–
 INTENTIONAL INTERFERENCE WITH CONTRACT

In count IV of plaintiff's second amended complaint, plaintiff alleges intentional interference with contract against CCC.  Under Michigan law, the elements of the tort of interference with a contractual relation are: (1) the existence of a contract; (2) a breach of the contract; and (3) instigation of the breach by the defendant without justification. 
Woody v. Tamer
, 158 Mich. App. 764, 773-74, 405 N.W.2d 213, 217 (1987).  The trial court correctly determined that plaintiff could not show the second and third elements.  As to the second element, as earlier discussed, there is no breach of contract in the instant case.  Moreover, plaintiff has not pleaded that CCC instigated the alleged breach.  CCC was called upon to do an appraisal of the vehicle.  The complaint showed that Progressive went to CCC for the vehicle valuations.  Thus, because plaintiff cannot show the second and third elements, count IV of the second amended complaint was correctly dismissed, under section 2
–
615, for failing to state a cause of action for intentional interference with contract against CCC.

SECTION 2
–
619 MOTIONS

In view of our conclusion, pursuant to section 2
–
615, that plaintiff failed to state any cause of action against Progressive, we need not address the arguments of Progressive regarding its motions to dismiss under section 2
–
619.

With respect to CCC, however, we have concluded that plaintiff adequately stated a cause of action under the Act and the trial court should not have granted CCC's section 2-615 motion to dismiss.  We shall now address the trial court's decision to dismiss plaintiff's complaint for the additional reasons that, pursuant to section 2-619, plaintiff's claims were barred by 
both the Federal Arbitration Act 
(9 U.S.C. §1 
et seq
. (2000)) 
and the doctrine of accord and satisfaction. 
Both of these affirmative matters are grounded in contract law.  CCC and plaintiff have no contractual relationship.  Because the appraisal process provided for in plaintiff's policy was designed solely to resolve disputes over the amount of the loss, plaintiff's claims against CCC could not be resolved through the appraisal process.  See 
Lundy v. Farmers Group, Inc.
, 322 Ill. App.3d  214, 219, 750 N.E.2d 314, 318
 (2001). 
 Assuming, without deciding, that these affirmative matters would apply to plaintiff's claims against Progressive
, w
e further hold that neither
 the Federal Arbitration Act 
(9 U.S.C. §1 
et seq
. (2000)) 
nor the doctrine of accord and satisfaction
 constitutes affirmative matter that would apply to plaintiff's 
particular allegations of consumer fraud against CCC.  
 

CONCLUSION

In accordance with the foregoing, pursuant to section 2
–
615, we affirm the trial court's order dismissing, with prejudice, counts I through III of plaintiff's second amended complaint against Progressive for failing to state a cause of action.  We also affirm 
the trial court's order dismissing, with prejudice, counts III and IV of plaintiff's second amended complaint against CCC for failing to state a cause of action.  
We reverse that portion of the trial court's order granting CCC's motion to dismiss count I of plaintiff's second amended complaint against CCC and remand this matter for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

O'MARA FROSSARD, P.J., and FITZGERALD SMITH, J., concur.