MARTHE C. PURMAL, Plaintiff-Appellant and Cross-Appellee, v. ROBERT N. WADINGTON AND ASSOCIATES *et al.*, Defendants-Appellees (Robert N. Wadington, Defendant-Appellee and Cross-Appellant).

First District (4th Division)   No. 1—03—3672

Opinion filed November 12, 2004.—Rehearing denied December 21, 2004.

716

Marthe C. Purmal, of Chicago, appellant *pro se.*

Robert N. Wadington, of Robert N. Wadington & Associates, of Chicago, for appellee Robert N. Wadington & Associates.

Robert A. Kezelis, of Palos Heights, appellee *pro se.*

JUSTICE THEIS delivered the opinion of the court:

Plaintiff Marthe C. Purmal, an attorney, filed this legal malpractice action *pro se* against her former lawyers, defendants Robert N. Wadington, Robert N. Wadington & Associates (Wadington & Associates), and Robert A. Kezelis (collectively, defendants). She now appeals from the trial court's orders dismissing her complaint upon defendants' motions to dismiss under sections 2—615 and 2—619 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2—615, 2—619 (West 2002)). Additionally, Wadington cross-appeals from an order of the court dismissing his cross-complaint upon Purmal's motion. For the following reasons, we affirm the dismissals of both Purmal's complaint and Wadington's cross-complaint.

This is the second time these parties have been before this court. In the first appeal, *Purmal v. Cooke*, No. 1—02—0004 (December 19, 2002) (unpublished under Supreme Court Rule 23), we found the following facts. In May 1998, the firm of French, Kezelis & Kominiarek filed a defamation action on Purmal's behalf against her co-employee, Richard Cooke. Purmal's employer, Continental Casualty Company (commonly known as CNA), provided a defense and stated that it would indemnify Cooke. Shortly thereafter, CNA terminated Purmal's employment and she filed a federal employment discrimination action against CNA, which was unrelated to her defamation case.

In March 2001, Kezelis terminated his employment at French, Kezelis & Kominiarek and accepted a position at Wadington & Associates. Purmal agreed that Kezelis would continue to represent her in the defamation action after he joined that firm. On March 13, 2001, Purmal signed a contingency fee contract with Wadington & Associates. On April 17, 2001, the trial court entered an order substituting Wadington & Associates as Purmal's new counsel.

Thereafter, Purmal entered into negotiations with CNA concerning her federal employment discrimination action. She agreed to

dismiss her federal discrimination lawsuit with prejudice and with no payment to her. CNA negotiated with Purmal regarding her defamation action, without any notice to Wadington & Associates. In August 2001, Purmal accepted a settlement agreement in which CNA agreed to pay her six yearly payments amounting to $219,332.94 to settle her defamation claim.

Purmal then terminated the legal services of Wadington & Associates and the firm filed a motion to withdraw from the case. At a hearing on November 1, 2001, Purmal and counsel for CNA acknowledged that a settlement had been reached. The court dismissed the case with prejudice and retained jurisdiction on the issue of attorney fees. Wadington & Associates petitioned the court for one-third of the settlement pursuant to the March 13, 2001, contingency fee contract between Purmal and Wadington & Associates. Wadington & Associates stated that it had performed substantial work on Purmal's defamation claim, including reviewing the entire file, performing legal research, communicating and meeting with Purmal, participating in discovery production, preparing for depositions, attending court appearances and communicating with opposing counsel. In her response to Wadington & Associates' fee petition, Purmal stated that the firm was not entitled to fees because it did not perform any work to effect a recovery. She argued that Wadington & Associates obtained her case file only two weeks before she entered into a settlement with CNA. Wadington & Associates replied that Purmal did not settle her case until after she had voluntarily retained the firm pursuant to the contingency fee agreement.

On December 12, 2001, following a hearing, the trial court found that Purmal voluntarily entered into an enforceable contingency fee contract and that Wadington & Associates was entitled to one-third of all settlement monies. Purmal then appealed the trial court's ruling to this court, alleging that Wadington & Associates' collection of one-third of the settlement constituted an excessive fee under Rule 1.5 of the Rules of Professional Conduct. 134 Ill. 2d R. 1.5. In our decision, this court found, contrary to Purmal's claims, that Wadington & Associates presented sufficient evidence of significant legal services rendered and that Kezelis was an experienced attorney. *Purmal v. Cooke*, No. 1—02—0004 (December 19, 2002) (unpublished under Supreme Court Rule 23). The court found no basis upon which to conclude that the trial court abused its discretion in determining that Wadington & Associates was entitled to the fee stated in the contingency fee agreement. Additionally, this court rejected Purmal's claims that she did not intend to hire Wadington & Associates as her attorneys based on the fact that the contingency fee agreement clearly

stated that Purmal hired the firm and that Purmal voluntarily entered into that agreement. Contrary to Purmal's contention that she fired that firm before any services were rendered, the court found that Wadington & Associates rendered significant legal services on her behalf. This court then found nothing in the record or the contract to justify a departure from the agreement into which the parties entered and held "the parties to the terms of their agreement," affirming the trial court's award of attorney fees to Wadington & Associates. Purmal filed a petition for rehearing to this court and a petition for leave to appeal to the Illinois Supreme Court, both of which were denied.

While her appeal was pending, Purmal filed the complaint at issue in this case. In count I, she alleged malpractice against Wadington individually. In count II against Wadington, she alleged "wilful and wanton malpractice" and sought punitive damages. In count III against Wadington and Wadington & Associates, Purmal alleged "tortious interference with contract." In count IV against Wadington, she alleged that he committed fraud when he filed a petition for attorney fees on behalf of his firm when he knew that no work had been performed by him or his firm. In count V, she alleged malpractice against Kezelis, and in count VI,[1] she alleged "willful and wanton malpractice" against Kezelis.

Wadington and Wadington & Associates filed a motion to dismiss under sections 2—615 and 2—619, arguing that res judicata and collateral estoppel barred Purmal's claims based on the trial and appellate courts' decisions in the fee petition action, she failed to plead sufficient facts to support her allegations, and punitive damages are not recoverable in a legal malpractice action. Kezelis also filed a motion to dismiss pursuant to sections 2—615 and 2—619, contending that Purmal's claims were barred by res judicata and collateral estoppel and otherwise failed to state a claim.

On January 30, 2003, the court granted both of defendants' motions to dismiss, dismissing all counts of the complaint under sections 2—615 and 2—619. The court gave Purmal leave to amend some of the allegations in the complaint, not including those claims dismissed pursuant to res judicata or collateral estoppel. Purmal then filed a motion to vacate that order, which was denied on May 8, 2003. Purmal's next motion, a motion to clarify these orders, was denied on November 14, 2003, when the court dismissed her entire complaint. Purmal then filed a timely notice of appeal.

On July 16, 2003, Wadington filed an amended cross-complaint

---

[1]Purmal mistakenly labeled the sixth count "count V." For simplicity, we will refer to this sixth count as "count VI."

against Purmal for breach of contract.[2] Purmal moved to dismiss this amended cross-complaint under sections 2—615 and 2—619, challenging Wadington's right to recover fees and arguing that his complaint did not state a cause of action. On November 14, 2003, the court granted Purmal's motion to dismiss Wadington's cross-complaint. Wadington was allowed to file a late notice of cross-appeal.

■ We first review Purmal's appeal from the dismissal of her complaint under sections 2—615 and 2—619 and address each count in turn. In ruling on a section 2—615 motion to dismiss, we must accept all well-pleaded facts as true. *Village of South Elgin v. Waste Management of Illinois, Inc.*, 348 Ill. App. 3d 929, 930, 810 N.E.2d 658, 662 (2004). Similarly, a motion to dismiss pursuant to section 2—619 admits all well-pleaded facts and the reasonable inferences capable of being drawn therefrom. *Waste Management of Illinois, Inc.*, 348 Ill. App. 3d at 930, 810 N.E.2d at 662. However, conclusions of law and conclusory factual allegations not supported by allegations of specific facts are not deemed admitted. *Waste Management of Illinois, Inc.*, 348 Ill. App. 3d at 930-31, 810 N.E.2d at 662. When ruling on either motion to dismiss, the trial court interprets all pleadings and supporting documents in the light most favorable to the nonmoving party. *Lucas v. Taylor*, 349 Ill. App. 3d 995, 998, 812 N.E.2d 72, 75 (2004). Illinois is a fact-pleading jurisdiction that requires a plaintiff to present a legally and factually sufficient complaint, and a plaintiff must allege sufficient facts to state all the elements of the asserted cause of action. *Weis v. State Farm Mutual Automobile Insurance Co.*, 333 Ill. App. 3d 402, 405, 776 N.E.2d 309, 311 (2002). We review the trial court order's dismissing plaintiff's complaint under sections 2—615 and 2—619 *de novo*. *Martinez v. Department of Public Aid*, 348 Ill. App. 3d 788, 790, 810 N.E.2d 608, 610 (2004).

■ In count I, her malpractice claim against Wadington, Purmal alleged in paragraphs 11(a) and (b) that Wadington breached his fiduciary duties by failing to communicate with her in a timely fashion concerning his representation of her and failing to communicate in a timely fashion concerning work done in the defamation action. In paragraph 11(h), she alleged that Wadington "breached the confidentiality terms of the Confidential Settlement Agreement [with CNA] by making it a part of the public record" in the defamation suit. Purmal alleged that as a direct result of these breaches, she was prevented from collecting the settlement money and sought $500,000 in damages. To prevail in an action for legal malpractice, a plaintiff must

---

[2]Wadington also alleged breach of contract claims against Cooke and CNA, but he has abandoned them on appeal.

plead and prove the following elements: (1) the existence of an attorney-client relationship which establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that "but for" the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) actual damages. *Cedeno v. Gumbiner*, 347 Ill. App. 3d 169, 174, 806 N.E.2d 1188, 1192 (2004).

■ Here, Purmal's allegations in paragraphs (a), (b) and (h) fail to state a valid cause of action for legal malpractice because she failed to establish the element of proximate cause. First, Purmal did prevail in the underlying litigation, the defamation suit, when she obtained a recovery pursuant to the settlement. Thus, she cannot plead and prove that but for Wadington's failure to communicate with her or his breach of confidentiality, she would have prevailed in the defamation suit. Additionally, Purmal never states with specificity how Wadington's failure to communicate or his breach of the confidential settlement prevented her from collecting the settlement money. Further, she has not pled the element of actual damages sufficiently where her claimed damages of $500,000 are purely speculative. *Mann v. Rowland*, 342 Ill. App. 3d 827, 838-39, 795 N.E.2d 924, 933 (2003) (where damages are speculative, actual damages are absent and no cause of action exists). Therefore, Purmal has failed to plead a valid cause of action for legal malpractice in paragraphs 11(a), (b) and (h) of count I.

Additionally, we find that Purmal's allegation in paragraph 21(e) of count V against Kezelis for malpractice also fails to state a claim upon which relief could be granted. In that paragraph, Purmal alleged that Kezelis "breached attorney-client privilege by making various representation[s] in an affidavit that plaintiff had made certain statements to him during the time he was representing her." She alleges that as a result of this breach, she was prevented from "collecting the settlement money in a timely fashion and she was unable to obtain a settlement of the [defamation] litigation for a fair and reasonable amount." Based on these statements, Purmal has not established the element of proximate cause. The first statement regarding a breach is merely a conclusion for which Purmal provides no factual support: she never explains what representations Kezelis made, in which affidavit he made them or what statements Purmal allegedly said to him during their relationship. She also never states with specificity how Kezelis' breach of the attorney-client privilege under these circumstances prevented her from collecting the settlement money. These conclusory allegations are insufficient to state a cause of action for legal malpractice against Kezelis. See *Weis*, 333 Ill. App. 3d at 410, 776 N.E.2d at 314 (without any allegations of fact showing the elements of the cause of action, the complaint was insufficient).

Many of Purmal's allegations in her complaint, namely, paragraphs 11(c) through (g) in count I, all of count II, paragraphs 21(a) through (d) of count V and all of count VI, are barred by the doctrine of *res judicata* based on the earlier decisions of the trial and appellate courts in the fee petition action. The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction acts as an absolute bar to a subsequent action between the same parties or their privies involving the same claim, demand or cause of action. *Arvia v. Madigan*, 209 Ill. 2d 520, 533, 809 N.E.2d 88, 97 (2004). The bar extends to all matters that were offered to sustain or defeat the claim in the first action, as well as all matters that could have been offered for that purpose. *Arvia*, 209 Ill. 2d at 533, 809 N.E.2d at 97. *Res judicata* promotes judicial economy by requiring parties to litigate in one case all claims arising out of the same group of operative facts. *Mann*, 342 Ill. App. 3d at 834, 795 N.E.2d at 929. The following three requirements must be met for the doctrine of *res judicata* to apply: (1) a court of competent jurisdiction rendered a final judgment on the merits; (2) there is an identity of parties or their privies; and (3) there is an identity of cause of action. *Mann*, 342 Ill. App. 3d at 834, 795 N.E.2d at 930.

The parties do not dispute that the trial court and appellate court decisions in the first action to resolve the contingency fee dispute were final judgments rendered on the merits by courts of competent jurisdiction. Purmal seems to challenge, however, the element of privity. She argues that Wadington & Associates was the only party to the original fee petition proceeding. Because Wadington and Kezelis were not parties, she contends, they "were not subject to the jurisdiction of the court." We disagree.

First, it is undisputed that Purmal was a party to both actions. Second, the fee petition was brought by "Robert N. Wadington, as sole owner of Robert N. Wadington & Associates," which implies that Wadington individually was a party to the suit. Even if Wadington & Associates was the only party, Wadington was a privy of Wadington & Associates where he was the sole owner of that firm. See *Travelers Casualty & Surety Co. v. Madden*, 346 Ill. App. 3d 859, 865, 806 N.E.2d 245, 249 (2004) (finding the sole shareholder of a company to be in privity with that company).

Additionally, we find that Kezelis was also in privity with Wadington & Associates. With respect to the doctrine of *res judicata*, there is no generally prevailing definition of "privity" which can automatically be applied to all cases; that determination requires a careful examination into the circumstances of each case. 23A Ill. L. & Prac. *Judgments* § 390 (1979). Privity expresses "the idea that as to certain mat-

ters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties." Restatement of Judgments § 83, Comment *a*, at 389 (1942). A nonparty may be bound under privity if that nonparty's interests are so closely aligned to those of a party that the party is the virtual representative of that nonparty. R. Michael, Illinois Practice § 41.5, at 317 (1989). "Privity" is defined as "[d]erivative interest founded on, or growing out of, contract, connection, or bond of union between parties; mutuality of interest." Black's Law Dictionary 1199 (6th ed. 1990).

Here, after considering all of the circumstances in this case, we find that Kezelis was in privity with Wadington & Associates in the original fee petition action. The contingency fee agreement, the subject of the first decision, clearly states that Purmal was retaining and employing "Robert N. Wadington & Associates & Robert A. Kezelis, of Counsel" as her attorneys to represent her in the defamation suit. Any fees recovered on behalf of Wadington & Associates would surely be shared with Kezelis. Kezelis was also connected to the first litigation because his interests in the attorney fees recovered would be affected by the judgment as if he was a party and his interest in the prior litigation arose from his connection to the law firm as an employee of that firm. Additionally, Kezelis was actively involved in the fee petition case by providing an affidavit and information concerning his representation of Purmal and the work he performed on her case. Lastly, Kezelis worked with Wadington as an employee and associate of Wadington & Associates. See *Neuberg v. Michael Reece Hospital & Medical Center*, 118 Ill. App. 3d 93, 100, 454 N.E.2d 684, 689 (1983) (finding one doctor to be in privity with another doctor who was a named defendant where the first doctor was an associate in the same practice with the named defendant). Thus, the second element of *res judicata* was met here because both Wadington and Kezelis were either parties or in privity with a party to the first litigation, Wadington & Associates.

Lastly, we must determine whether there is an identity of the cause of action between the decision in the fee petition litigation and Purmal's present complaint alleging legal malpractice. Illinois courts adhere to the "transactional" test to determine whether causes of action are the same for purposes of *res judicata*. Under this test, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311, 703

N.E.2d 833, 893 (1998). As long as the claims arise from the same transaction, they will be considered to be the same cause of action, even if there is not a substantial overlap of evidence between the claims. *LP XXVI, LLC v. Goldstein*, 349 Ill. App. 3d 237, 240, 811 N.E.2d 286, 288 (2004).

In this case, paragraphs (c) through (g) of count I, all allegations in count II, paragraphs 21(a) through (d) in count V and all of count VI involve the same group of operative facts that gave rise to the earlier case awarding attorney fees to defendants and, thus, involve the same cause of action. In paragraphs (c) through (g) of count I, Purmal alleged that Wadington committed malpractice by making a claim for fees "without having made a recovery" for her and knowing that he and Wadington & Associates "performed no work" on her case. She also stated that Wadington claimed he was entitled to fees despite the fact that Kezelis knew that no work had been performed in the two weeks that Wadington & Associates had the case and despite the fact that Purmal had fired the firm. Purmal also alleged that Wadington's claim for fees in the amount of $73,000 was unreasonable under Rule 1.5 "since no work had been performed and no recovery was made" for her. Every allegation in count II states that Wadington "intentionally" committed substantially the same acts as alleged in count I and all concern Wadington's attempt to collect attorney fees under the contingency fee agreement.

In count V, she stated that although she signed a contingency fee contract with Wadington & Associates, she did so only because Kezelis told her he needed a signed contract to transfer the case to his new firm. At no time did Kezelis inform her that by signing the contingency fee agreement, she was retaining Wadington or Wadington & Associates. In paragraphs 21(a) through (d), Purmal alleged that Kezelis breached his fiduciary duties by failing to advise her that he, Wadington and Wadington & Associates "would claim attorneys' fees in the amount of one-third of any amount of the [defamation settlement] so that [they] would benefit to the plaintiff's financial detriment," "claim[ing] that work was performed on the [defamation suit] after the date of the settlement" so they could obtain fees, and claiming that they were entitled to $73,000 in attorney fees which were unreasonable under Rule 1.5 "since no work was performed by them and they made no recovery" for Purmal.

In count VI, Purmal alleged that Kezelis willfully and wantonly breached his fiduciary duties by "intentionally" committing the same acts as alleged in count V, including that he "intentionally failed to inform plaintiff" that Wadington & Associates would seek fees and he "intentionally made a claim that work had been performed on the

[defamation] litigation despite the fact that no such work had been done." Additionally, she alleged that he committed malpractice by claiming attorney fees when Wadington & Associates had her case for only two weeks before it settled and misleading Purmal into signing the contingency fee contract. Every one of these allegations concerns defendants' attempt to collect attorney fees under the agreement.

These allegations involve the interpretation and validity of the contingency fee contract, all of which arose out of the same group of operative facts. Here, there was one transaction—the creation of the contingency fee agreement—an issue that was litigated and decided against Purmal in the first action. Further, in her response to the fee petition, Purmal argued that Wadington and Kezelis did not do any work on her case, the file was only in their office for two weeks before her case settled, they did not effect a recovery for her, they were not entitled to recover any fees, she did not intend to hire Wadington & Associates, and she only signed the contingency fee agreement because Kezelis told her he needed a signed contract in order to transfer the case to his new firm. Thus, identity of cause of action clearly exists between paragraphs (c) through (g) of count I, count II, paragraphs 21(a) through (d) in count V, and count VI in this case and the earlier action brought by defendants to recover attorney fees under the contingency fee agreement. Because all three requirements for the application of *res judicata* have been met here, the doctrine applies to bar the majority of Purmal's claims she now brings against Wadington & Associates, Wadington and Kezelis.

Purmal repeatedly argues that the appellate court decision affirming the award of attorney fees to defendants does not address every issue or every case citation that she raises in this malpractice case, and thus, *res judicata* cannot bar the litigation of these issues. However, Purmal fails to understand that *res judicata* bars all matters that *were* offered to sustain or defeat the claim in the first action, as well as all matters that *could* have been offered for that purpose. *Arvia*, 209 Ill. 2d at 533, 809 N.E.2d at 97. Thus, even if the appellate court decision did not address all of the issues and cases she now raises, the fact remains that she *could* have offered all of these matters in response to defendants' fee petition and is now barred from relitigating them here.

Purmal practically concedes this issue in her brief when she states, "Plaintiff's complaint is based purely and simply on the conduct of Robert N. Wadington and Robert A. Kezelis, as attorneys, in making a claim for fees from plaintiff." That was the very subject of the fee petition brought in the defamation action. Purmal was free to, and in fact did, respond to the petition and attack the veracity of Wadington's

and Kezelis' claims that they performed substantial work on her case and that their work resulted in a recovery to her. In this legal malpractice action, Purmal attempts to relitigate issues that have already been decided by the trial and appellate courts' decisions concerning the fee agreement or issues that Purmal could have raised in that proceeding. We will not allow Purmal to take "two bites out of the same apple." *Arvia*, 209 Ill. 2d at 534, 809 N.E.2d at 98. Thus, paragraphs (c) through (g) in count I, all allegations in count II, paragraphs 21(a) through (d) in count V, and count VI are barred by *res judicata* and were properly dismissed. Because we have determined that these claims are barred by *res judicata*, we do not reach the issue of collateral estoppel.

Purmal relies on *Weisman v. Schiller, Ducanto & Fleck*, 314 Ill. App. 3d 577, 733 N.E.2d 818 (2000), for her proposition that a client may bring an action for malpractice against his counsel after a decision in favor of the attorney on a fee petition. However, we find *Weisman* distinguishable. In that case, the plaintiff brought a legal malpractice action against her attorneys, alleging that they were negligent in failing to investigate and discover the extent of her and her ex-husband's marital property and failed to perform adequate discovery of her ex-husband's law practice in the underlying divorce action. *Weisman*, 314 Ill. App. 3d at 578, 733 N.E.2d at 819-20. The trial court dismissed her complaint, finding it barred by *res judicata* where the plaintiff had raised the defendants' negligence as an affirmative defense in a previous fee petition action. The appellate court reversed, finding that the doctrine of *res judicata* did not apply to the facts of that case. *Weisman*, 314 Ill. App. 3d at 579, 733 N.E.2d at 820-21. However, the court then explained:

> "The petition for fees sought compensation for services performed in the dissolution action. Plaintiff was contractually obligated to pay those fees that were justified based upon the services actually rendered, the hours dedicated to those services, and the reasonableness of the defendant's hourly rate. In defending the petition, plaintiff could only claim that she was entitled to a reduction in fees because the specified work had not been performed at all or had not been performed competently, the hours were not justified, or the hourly rate was unreasonable." *Weisman*, 314 Ill. App. 3d at 579-80, 733 N.E.2d at 821.

Here, Purmal's legal malpractice claim did not allege that her attorneys were negligent in the underlying defamation suit but, rather, attacked their ability to recover attorney fees. She specifically alleged that her attorneys did no work on her case, made no recovery for her and were not entitled to fees under the contingency fee contract. Un-

like the plaintiff in *Weisman*, Purmal could have brought, and in fact did bring, all of these claims in the fee petition action. Thus, while *Weisman* is distinguishable on its facts, its analysis actually supports our holding that *res judicata* bars Purmal's claims. Additionally, we decline to relax the application of *res judicata* here, finding that the fundamental fairness exception does not apply.[3]

We next address count III for tortious interference with a contract against Wadington and Wadington & Associates. First, we note that Purmal cites no authority for this argument. Accordingly, she has waived review of this issue on appeal. 210 Ill. 2d R. 341(e)(7); *Martinez*, 348 Ill. App. 3d at 795, 810 N.E.2d at 614 ("[p]laintiff's failure to present a coherent argument supported by citations to relevant authority waives the issue for review"). Additionally, although this count is based on a written contract, Purmal failed to attach the contract, the confidential settlement agreement, to her complaint in violation of section 2—606 of the Code. 735 ILCS 5/2—606 (West 2002).

■ Waiver aside, we find that the trial court properly dismissed count III because it failed to state a claim. In order to state a cause of action for tortious interference with a contract, the plaintiff must allege: (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by the third party; and (5) damages. *Kehoe v. Saltarelli*, 337 Ill. App. 3d 669, 676-77, 786 N.E.2d 605, 612 (2003).

■ In count III, Purmal alleged that she and CNA settled the discrimination and defamation actions on May 1, 2001, and that they chose to allocate the monetary portion of their settlement to the defamation action. She stated that under the confidential settlement agreement, Wadington and Wadington & Associates were to provide CNA with a release of attorney's lien before CNA paid Purmal. She further alleged that Wadington, "knowing that neither he nor anyone from his firm had performed any work on the [defamation] litigation or made a recovery for the plaintiff in that matter[,] intentionally and

---

[3]Purmal's other cited case, *Wilson v. M.G. Gulo & Associates, Inc.*, 294 Ill. App. 3d 897, 691 N.E.2d 875 (1998), is similar to *Weisman* and also distinguishable from the present case. In *Wilson, res judicata* did not apply where the legal malpractice suit filed by the plaintiff claimed negligent representation in the underlying divorce action and did not attack the propriety of the fees which had already been resolved in a fee petition. As discussed above, Purmal's malpractice claims raise only issues concerning the fee agreement which were and could have been raised in the first action.

maliciously made a claim for attorneys' fees." Wadington and his firm "intentionally and maliciously refused to sign a release of attorneys' fees or lien despite the fact that neither of them had performed any work" and threatened CNA "that a lawsuit would be filed against [it] if the settlement agreement were changed to attribute the settlement to the discrimination case." As a result of defendants' threats, CNA "refused to change the allocation of the settlement proceeds from the [defamation] litigation to the discrimination case" and refused to pay the proceeds of the settlement to Purmal. She also alleged that defendants "maliciously and intentionally interfered with [the] settlement agreement."

Based on these allegations, Purmal has failed to prove the fourth element, that defendants' wrongful conduct caused CNA to subsequently breach the contract. Nowhere in this count does Purmal allege that CNA breached the confidential settlement agreement. Additionally, a review of the settlement agreement, attached to defendants' motion to dismiss, shows that CNA did not breach the agreement. Paragraph 9 explains that CNA's obligations, including its obligation to pay Purmal, would not attach until after CNA was in receipt of all necessary and fully executed documents showing waiver and/or satisfaction and release by Purmal's counsel. Thus, under the confidential settlement agreement, CNA was not obligated to pay Purmal until Purmal obtained the necessary releases from defendants. Because Purmal does not and cannot allege that CNA breached the agreement, her claim for tortious interference with a contract fails to state a cause of action.

■ Next, we address count IV against Wadington for fraud. First, we find that Purmal has waived review of the dismissal of this count by failing to argue this count on appeal. Supreme Court Rule 341(e)(7) provides that "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." 210 Ill. 2d R. 341(e)(7). Therefore, Purmal has forfeited on appellate review any argument concerning the dismissal of count IV. *Bunting v. Progressive Corp.*, 348 Ill. App. 3d 575, 581, 809 N.E.2d 225, 231 (2004).

Even if we did not find this issue waived, all of the allegations in count IV are barred by *res judicata*. In these allegations, Purmal stated that Wadington committed fraud when he filed a petition for fees and when he stated that he performed work on her case and made a recovery for her, "knowing that such statements were untrue" and "for the purpose of obtaining money from [plaintiff]." In so doing, Purmal alleged that Wadington "defrauded [Purmal] of money to

which she was entitled by misrepresenting to the court that he had a valid claim for attorneys' fees." This count concerns solely the propriety of Wadington's fee petition and attacks his request for fees, all of which were issues that were addressed in the prior litigation or could have been raised at that time. *Arvia*, 209 Ill. 2d at 533, 809 N.E.2d at 97. Thus, all of the allegations in count IV were properly dismissed as barred by *res judicata*.

■ We next address the dismissal of the remainder of count V which alleged malpractice against Kezelis. In paragraphs 7(a) through (f) in that count, Purmal alleges that Kezelis breached his fiduciary duties and committed malpractice by, *inter alia*, failing to ask relevant questions at Cooke's deposition, failing to complete Cooke's deposition within a certain time frame, failing to schedule and obtain depositions of witnesses, failing to perform any work on the file, and failing to make a demand for settlement and enter into negotiations to settle the defamation suit. However, Purmal has waived any argument concerning the dismissal of these allegations on appeal by not including any argument as to why their dismissal was erroneous in her brief. 210 Ill. 2d R. 341(e)(7). Therefore, Purmal has forfeited on appellate review any argument about these specific allegations in count V. *Bunting*, 348 Ill. App. 3d at 581, 809 N.E.2d at 231.

■ Lastly, Purmal argues that Kezelis exerted undue influence upon her. None of these allegations are contained within her complaint, however, and thus, we cannot review them. She then asks for leave to amend her complaint to add these allegations of undue influence and also asks this court generally to reverse and allow her leave to amend other counts of her complaint. However, we find that Purmal has waived any right to seek leave to amend when she failed to amend her complaint in the trial court despite obtaining permission to do so and when she conceded that she did not wish to amend.

Although the court's January 30, 2003, order granted Purmal leave to amend portions of her complaint, she never filed an amended complaint. Additionally, at the hearing on November 14, 2003, Purmal conceded that she did not want to amend her complaint in the following colloquy:

"THE COURT: Weren't you going to file an amended complaint?
MS. PURMAL: No.
THE COURT: You don't want to.
* * *
MS. PURMAL: *** I can't file an amended complaint given your Honor's limitations.
THE COURT: I understand. Therefore, it sounds to me like

everything is done then. And that's what you're saying right? You don't wish to amend?

MS. PURMAL: No. I'd like to appeal based on—

THE COURT: Errors the court has made in its prior rulings.

MS. PURMAL:—all of the rulings. ***

* * *

MS. PURMAL: Right. I would ask your Honor just to proceed to dismiss the whole complaint.

THE COURT: Well, if I've given you leave to amend, you have declined to amend. I guess I can dismiss your complaint, which I'll do.

MS. PURMAL: Fine."

While the trial court gave her several opportunities to amend her complaint, Purmal never took advantage of these opportunities and specifically stated that she did not wish to amend and, rather, wished to file an appeal. By stating that she did not wish to amend her complaint, she effectively did not seek leave to amend in the trial court and has, thus, waived any right on appeal to seek leave to amend her complaint. See *Grund v. Donegan*, 298 Ill. App. 3d 1034, 1040, 700 N.E.2d 157, 161 (1998). Accordingly, we find that the trial court properly granted defendants' motions to dismiss Purmal's complaint in its entirety.

■ Next, we address Wadington's cross-appeal. In his cross-complaint for breach of contract against Purmal, he alleged that Purmal and Wadington entered into a contingency fee agreement and Wadington then entered an appearance as her attorney in the defamation suit. He alleged that Purmal agreed to settle that lawsuit for $219,332.94 and that the defamation case was dismissed pursuant to settlement on November 1, 2001. Purmal breached their contingency fee agreement, Wadington alleged, by failing to pay him his attorney fees of $73,110.98, which represented one-third of her settlement proceeds. He sought that amount in damages, plus costs and interest. On appeal, Wadington argues that the court erred in dismissing his breach of contract claim.

We find that Wadington's cross-complaint was properly dismissed as barred by *res judicata*. As discussed above, the first two elements of *res judicata* are satisfied. Additionally, there is an identity of the cause of action between the issues raised in Wadington's cross-complaint and the issues raised and decided in the prior fee petition action. In the previous case, the trial and appellate courts determined that the contingency fee agreement between Wadington and Purmal was valid and enforceable and held that Purmal owed Wadington attorney fees in the amount of one-third of the settlement proceeds under that

agreement. Although Wadington seeks different relief in this cross-complaint for breach of contract, separate claims constitute the same cause of action under the doctrine of *res judicata* if they arise from a single group of operative facts, even if they assert different theories of relief. *River Park, Inc.*, 184 Ill. 2d at 311, 703 N.E.2d at 893. Here, both the cross-complaint and the prior fee petition action arose out of the same group of operative facts. Wadington is attempting to relitigate the validity of the contingency fee agreement and the issue of whether it is enforceable against Purmal. These issues have already been decided in the fee petition action and cannot be raised again here. Thus, his cross-complaint is barred by *res judicata*. To the extent Wadington is attempting to enforce the judgment entered in the fee petition action, he should do so within that action. See *Holwell ex rel. Holwell v. Zenith Electronics Corp.*, 334 Ill. App. 3d 917, 922, 779 N.E.2d 435, 440 (2002) (courts retain jurisdiction beyond 30 days to enforce the terms of a judgment).

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

REID, P.J., and QUINN, J., concur.