2022 IL App (1st) 210942-U

FIRST DISTRICT,
FIRST DIVISION
November 21, 2022

No. 1-21-0942

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

|  |  |  |
|---|---|---|
| ADRIANA MAZUTIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 2020 L 2307 |
| LAWRENCE KARLIN, WARREN LUPEL, and LUPEL WEININGER, LLP, | ) ) ) ) | Honorable Daniel Kubasiak, Judge Presiding. |
| Defendants-Appellees. | ) ) | |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Pucinski and Hyman concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Dismissal of plaintiff's "First Amended Complaint at Law" affirmed where it fails to state a claim upon which relief can be granted pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615).

¶ 2   Plaintiff Adriana Mazutis filed an action against defendants Lawrence Karlin, Warren Lupel, and Lupel Weininger, LLP (Lupel Weininger) (collectively referred to as defendants), alleging a number of claims related to their representation of plaintiff in the underlying litigation, *Adriana Mazutis v. Polekatz Gentleman's Club, Inc., et al.,* Case No. 2007-CH-18984. After

filing three amended complaints, plaintiff voluntarily dismissed her action. The action was later re-filed. Summary judgment was ultimately granted in favor of defendants and the action was dismissed again, with prejudice.

¶ 3 On appeal, this court reversed and remanded, directing the trial court to allow plaintiff to file an amended complaint "with the admonition that the complaint must comply with section 2-603 of the Code" of Civil Procedure (Code) (735 ILCS 5/2-603 (West 2018)). *Mazutis v. Lupel*, 2019 IL App (1st) 173048-U, ¶ 13. The "First Amended Complaint at Law"[1] plaintiff filed on remand was dismissed by the trial court pursuant to sections 2-603 and 2-615 (735 ILCS 5/2-615 (West 2018)) of the Code. Plaintiff now appeals that dismissal. For the reasons stated herein, we affirm the trial court's dismissal of plaintiff's "First Amended Complaint at Law."

¶ 4                                                    BACKGROUND

¶ 5 While plaintiff was married to Steven Reynolds, they acquired an equitable ownership interest in Polekatz Gentleman's Club ("the Club"). Plaintiff operated the Club and received a monthly salary and a share of the net profits generated from the Club. After her husband's death in March 2007, plaintiff was "locked out of the business" and denied her salary and the "value of her ownership interest" by other investors.

¶ 6 On July 18, 2007, the RockFusco law firm filed an action on plaintiff's behalf against the Club and its investors "to restore her position." In July or August 2007, plaintiff was introduced to defendants by George Michael, a mutual acquaintance and client of defendants, for the "purpose of hiring the Defendants to prosecute claims *** against Polekatz *** and Vonch,

---

[1] Although plaintiff titled her complaint "First Amended Complaint at Law," this is technically her second amended complaint in the re-filed action. For the purposes of this appeal, we refer to it as the "First Amended Complaint at Law."

LLC."[2] Plaintiff advised defendants that she intended "to take back the Club and *** operate the Club as she had prior to her husband's death." In August 2007, defendants filed an appearance on plaintiff's behalf in the Polekatz litigation. On February 1, 2011, plaintiff "fired" defendants after "discover[ing] that the Defendants [*sic*] advice was for the purpose of preserving a claim on her rights to the business for the benefit of George Michael." The Polekatz litigation eventually settled.[3]

¶ 7                                    Original Action

¶ 8        On September 13, 2012, plaintiff filed a complaint against defendants, asserting claims of legal malpractice, "conflicts of interest," fraud, breach of fiduciary duty, and negligent supervision and hiring. Plaintiff generally alleged that defendants "committed legal malpractice when [they] engaged in conflicts of interest [and] ceded control of the Litigation" to both George and his brother Robert Michael.[4] Plaintiff's original complaint also alleged that defendants were negligent in their representation of her in a probate matter relating to her husband's will.

¶ 9        On July 19, 2013, the trial court "grant[ed] the [defendants' section 2-619] motion to dismiss regarding the estate of Steven Reynolds," finding that this claim was barred by the statute of limitations. Because "there [were] a lot of other allegations in the complaint *** [that] weren't even addressed in [defendants'] motion" that the trial court wanted "laid out better," the court struck the complaint in its entirety and granted plaintiff leave to file an amended complaint.

---

[2] Plaintiff's "Fist Amended Complaint at Law" does not explain what "Vonch, LLC" is, but our review of the record reveals that it is the "holding company" for Polekatz.

[3] Plaintiff's "First Amended Complaint at Law" does not allege when the litigation settled. Our review of the record shows that the parties entered into a confidential settlement agreement, but the record does not contain the date of the settlement.

[4] Some allegations refer to both George and his brother Robert Michael, so we refer to them by their first names, or collectively as the "Michael brothers."

¶ 10        Plaintiff's first amended complaint was filed on August 23, 2013. Defendants moved to dismiss pursuant to sections 2-615 and 2-619 (735 ILCS 5/2-619) of the Code. On November 26, 2013, the court dismissed counts II ("Conflicts of Interest and Breach of Duty of Loyalty") and IV ("Breach of Fiduciary Duty") of the amended complaint with prejudice, and all other counts without prejudice.

¶ 11        On January 6, 2014, plaintiff filed a second amended complaint, adding a claim for breach of contract. Defendants again moved to dismiss the complaint.[5] At a March 21, 2014, status hearing, the trial court gave plaintiff leave to file a third amended complaint over defendants' objection, but indicated that no further amendments would be allowed. On March 28, 2014, plaintiff filed a third amended complaint. On August 27, 2014, the trial court denied defendants' motion to dismiss counts I, III, V, and VI of the third amended complaint.[6] On October 25, 2016, the court granted plaintiff's Motion for Voluntary Dismissal pursuant to 735 ILCS 5/2-1009 without prejudice.

¶ 12                            Re-Filed Action

¶ 13        On January 3, 2017, plaintiff re-filed her action against defendants. (Case No. 2017 L 00008). On April 10, 2017, defendants filed an answer and affirmative defenses, and the parties proceeded with expert discovery. During the four years prior to the action being voluntarily dismissed, the parties completed extensive written and oral discovery.

¶ 14        On September 7, 2017, pursuant to defendants' motion for summary judgment, the trial court entered judgment in favor of defendants and against plaintiff, "disposing of the case in its

---

[5] Defendants' motion to dismiss is not contained in the record on appeal, so we do not know on what grounds defendants moved to dismiss plaintiff's second amended complaint.

[6] The motion was filed under sections 2-615 and 2-619 of the Code.

entirety." The court found that plaintiff "presented no evidence that Defendants proximately caused her damages" and that her cause of action was barred by the statute of limitations.

¶ 15    Plaintiff appealed the dismissal of counts I, III, V, and VI, but did not appeal the dismissal of counts II and IV (which were also dismissed with prejudice). On February 15, 2019, this court reversed, finding that "[t]he deficiencies in the plaintiff's complaint and the circuit court's failure to address all of the claims asserted therein, prevent us from reaching the substantive issues" raised on appeal. *Mazutis*, 2019 IL App (1st) 173048-U, ¶ 8. We held that plaintiff's complaint failed to comply with section 2-603(b) of the Code by including multiple causes of actions in each count. *Id.* ¶¶ 9, 13. Exercising our power under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we struck plaintiff's complaint and remanded for the filing of an amended complaint. *Id.* ¶ 13. In doing so, we expressly admonished "that the complaint must comply with section 2-603 of the Code, requiring a 'plain and *concise* statement' of the plaintiff's cause of action with each cause of action stated in a separate count that is separately pled, numbered, and divided into consecutively numbered paragraphs with each paragraph containing a separate allegation." (Emphasis added in original.) *Id.* (quoting 735 ILCS 5/2-603).

¶ 16    On remand, plaintiff filed a "Complaint at Law,"[7] which defendants moved to dismiss pursuant to sections 2-603, 2-615, and 2-619 of the Code. The trial court found that "[plaintiff] has failed to comply with 735 ILCS 5/2-603 when pleading counts I through VI, and the complaint is drafted in such a manner as to render any attempt by Defendants to answer futile." Plaintiff was granted leave "to replead counts I, III, V, and VI." As to counts II and IV, the trial court incorrectly indicated that those counts "were previously dismissed by the Appellate Court

---

[7] While plaintiff titled this "Complaint at Law," it is her first amended complaint in the re-filed action.

on November 26, 2013." Although those counts were dismissed by the circuit court on November 26, 2013, plaintiff did not appeal the dismissal of counts II and IV.[8]

¶ 17    On February 24, 2021, plaintiff filed her "First Amended Complaint at Law." The six-count complaint alleged: "Legal Malpractice Regarding the Polekatz Litigation" (count I), "Legal Malpractice regarding Breach of Fiduciary Duties for conflicts of interest" (count II), "Legal Malpractice regarding Fiduciary duties for unauthorized disclosures" (count III), fraud (count IV), negligent supervision and hiring (count V)  (against Lupel and Lupel & Lupel Weininger only), and breach of contract (count VI).

¶ 18    On March 26, 2021, defendants filed two motions to dismiss the "First Amended Complaint at Law." In the first, defendants argued that counts I, II, III, and VI violated section 2-603 of the Code by commingling multiple causes of actions. In the second, defendants argued that counts II and IV had been previously dismissed with prejudice; plaintiff "was not given leave to replead these counts"; all counts failed to state a claim under section 2-615 of the Code; and that certain allegations in count I were precluded by the viability doctrine and should be dismissed pursuant to section 2-619 of the Code.

¶ 19    On July 16, 2021, the trial court entered two separate dismissal orders. In the first order, the court found that counts I, II, III and VI "fail[ed] to comply with the requirements of section 2-603 as they "remain 'virtually impossible' to decipher." Specifically, the trial court found that count I alleged "multiple causes of actions *** including facts that appear to support a cause of action for breach of fiduciary duty, and fraud," count II alleged "multiple causes of action," count III "commingle[d] two causes of action into one," and count VI contained "causes of

---

[8] The Appellate Court's decision is dated February 15, 2019. The circuit court dismissed counts II and IV of plaintiff's first amended complaint in the original action with prejudice on November 26, 2013.

action for breach of contract, breach of fiduciary duty, and fraud and conspiracy." Counts I, II, III, and VI were dismissed with prejudice.

¶ 20   In the second order, the trial court found that counts II and IV "had previously been dismissed and the court did not grant Plaintiff leave to refile these counts." The court dismissed count V pursuant to section 2-615, because plaintiff "failed to sufficiently allege facts, rather than conclusions" and failed to "identif[y] a 'particular unfitness' by Karlin to perform his job as an attorney, let alone that Lupel and/or Lupel Weininger knew about any such 'unfitness' or that any such 'unfitness proximately caused an injury to [p]laintiff."

¶ 21                              ANALYSIS

¶ 22   Initially, defendants assert that we should strike the "first two pages" of plaintiff's statement of facts because it is "wholly argumentative and devoid of a single citation to the record." Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020) requires that the statement of facts shall be "stated accurately and without argument or comment, and with appropriate reference to the pages of the record on appeal ***." We agree that this portion of plaintiff's statement of facts is argumentative and fails to cite to the record, but decline to strike the brief. We will disregard the noncompliant portions of plaintiff's statement of facts in our review and admonish counsel to carefully follow supreme court rules in future submissions. See *Hubert v. Consolidated Medical Laboratories*, 306 Ill. App. 3d 1118, 1120 (1999).

¶ 23   Plaintiff argues that the trial court erred in finding that counts II and IV of the complaint were previously dismissed with prejudice. Defendants respond that the dismissal of *counts II and III* was proper pursuant to the law of the case doctrine or, alternatively, *res judicata*, because these counts were dismissed with prejudice in the original action.

¶ 24    Plaintiff re-numbered and re-labeled the counts in the "First Amended Complaint at Law," which understandably caused some confusion in the trial court. In the first amended complaint filed in the original action, count II (alleging "Conflicts of Interest and Breach of Duty of Loyalty") and count IV (alleging "Breach of Fiduciary Duty") were dismissed *with prejudice*. The trial court found that count II was improperly based on "purported violations of the Illinois Rules of Professional Conduct" and count IV was duplicative of count I. In the current "First Amended Complaint at Law," count II alleges "Legal Malpractice regarding Breach of Fiduciary Duties for conflicts of interest," count III alleges "Legal Malpractice regarding Fiduciary duties for unauthorized disclosures," and count IV alleges fraud.

¶ 25    The law of the case doctrine provides that "where an issue has been litigated and decided, a court's unreserved decision on that question of law or fact settles that question for all subsequent stages of the suit." *Alwin v. Village of Wheeling*, 371 Ill. App. 3d 898, 911 (2007). *Res judicata* bars a "subsequent action" if it involves the "same claim, demand, or cause of action" as a previous action involving the same parties that was decided on the merits. *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 73. Because the allegations contained in counts II and III of the current complaint are different from the allegations previously dismissed with prejudice, counts II and III of the current complaint are not barred by the law of the case doctrine or *res judicata*. Count IV, which now alleges fraud, also contains different allegations than those dismissed with prejudice in the original action. In any event, for the following reasons, counts II, III, and IV of the "First Amended Complaint at Law" were still properly dismissed.

¶ 26                                    Section 2-615

¶ 27        Defendants argue that plaintiff's "First Amended Complaint at Law" should have been dismissed in its entirety pursuant to section 2-615 because it fails to state a claim upon which relief can be granted. The trial court dismissed count V pursuant to section 2-615 of the Code and counts I, II, III, IV, and VI pursuant to section 2-603 of the Code. However, "we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis and whether or not the trial court's reasoning was correct." *Khan v. Fur Animal Rescue, Inc.*, 2021 IL App (1st) 182694, ¶ 25.

¶ 28        A section 2-615 motion to dismiss attacks the legal sufficiency of a complaint based on the face of the pleading. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). We accept all well-pleaded facts as true and draw all reasonable inferences from those facts. *Id.* "The essential question is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11. A complaint will not be dismissed unless no set of facts can be proved which will entitle the plaintiff to recover. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). "Mere conclusions of law or facts unsupported by specific factual allegations in a complaint are insufficient to withstand a section 2-615 motion to dismiss." *Estate of Powell ex rel. Harris v. John C. Wunsch, P.C.*, 2013 IL App (1st) 121854, ¶ 15. We review a section 2-615 dismissal *de novo. Id.*

¶ 29                              Counts I-III: Legal Malpractice

¶ 30        To state a claim for legal malpractice, a plaintiff must plead "(1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause establishing that 'but for' the

attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) actual damages." *Lucey v. Law Officers of Pretzel & Stouffer, Chartered*, 301 Ill. App. 3d 349, 353 (1998). "Even if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 226 (2006). "The existence of actual damages is therefore essential to a viable cause of action for legal malpractice." *Id.*

¶ 31        The allegations set forth in count I for "Legal Malpractice Regarding the Polekatz Litigation" are conclusory, not supported by specific facts, and not connected to any injury. Plaintiff claims that defendants drafted a fraudulent purchase agreement between herself and George, "transfer[ing] all or part of [her] business interest to George." As a result, the Polekatz defendants filed a motion for summary judgment, asserting that George, "not [plaintiff], was the real party in interest in the litigation." Defendant Karlin's response, which included George's affidavit, "disclaim[ed] his interest in the Purchase Agreement." Notably, the motion for summary judgment was denied. Plaintiff also alleges that defendants "[n]egligently advised [her] regarding the effect of the purported assignments of [her] interest in the Club to George Michael" and "negligently presented inaccurate facts to the trial court relating to Michael's assertions of rights in the Litigation." However, plaintiff fails to allege how she was injured by these acts.

¶ 32        Although plaintiff claims that defendants' conduct "led to litigation against her *** filed by George Michael," the nature of this "litigation" is not identified in count I. She also claims that she was "required to expend in excess of $30,000.00 defending against [George] Michael's attempts to intervene as a party in the Polekatz litigation," but fails to disclose how George attempted to intervene or how these attempts are related to defendants' conduct.

¶ 33        In alleging that defendants "took direction from the Michael Brothers," plaintiff claims that defendants "conferred with Michael [in December, 2010] to determine what discovery requests would be issued." No other facts are alleged describing how defendants took direction from either George or Robert Michael. She also asserts that defendants protected the interests "of others" and took payment "from others," without identifying these "others," what interests were protected, or how she was injured as a result.

¶ 34        Plaintiff alleges that defendants failed to "make any attempt to settle the Litigation,"; "advise or consult with [her] regarding any amendments to her complaint"; allege loss of compensatory losses of salary or monetary interest in the Club; and conduct discovery related to the value of Polekatz. She claims she was "forced to settle" for a "fraction of the damages incurred by her," but alleges no facts supporting these vague accusations. Conclusory allegations that defendants were negligent are fatally insufficient in the absence of specific facts showing that defendants' conduct proximately caused "actual damages." See *Tri-G, Inc.*, 222 Ill. 2d at 226.

¶ 35        Finally, plaintiff alleges that defendants were negligent in failing "to bring suit against Robert and George Michael for the theft and conversion of her assets." Since she fails to disclose what assets were stolen and converted, whether defendants were retained for this purpose, or why they would have otherwise had a duty to sue the Michael brothers on her behalf, count I fails to state a claim for legal malpractice. See, *e.g.*, *Purmal v. Robert N. Wadington and Associates*, 354 Ill. App. 3d 715, 721 (2004) (plaintiff failed to state a claim for legal malpractice where she "never states with specificity how [defendant's] failure to communicate or his breach of the confidential settlement prevented her from collecting the settlement money").

¶ 36       Counts II and III are similarly deficient. Count II alleges that defendants were negligent in taking "strategic direction from George and Robert Michael." Again, no specific factual allegations support this claim or explain the manner in which the value of her settlement was diminished. Plaintiff also alleges that after defendants were fired, they represented George in a motion to intervene in the Polekatz litigation and represented George and Susan Tamuzian in separate lawsuits against plaintiff, asserting their respective interests in Polekatz. Plaintiff claims that the Tamuzian action "directly diminished the value of [her] ownership right by $1,000,000.00," but admits that the Tamuzian action was "voluntarily dismissed." Conclusory allegations that George's lawsuit "had the effect of reducing, diminishing and destroying [her] interest in the Litigation and the value of the Club," are fatally insufficient.

¶ 37       In count III, plaintiff alleges that defendants disclosed confidential information to the Michael brothers, including "tax returns, financial statements, [and] business papers regarding the financial condition of other ventures." No facts are alleged demonstrating how "[b]ut for [d]efendants [*sic*] negligent disclosures of confidential information *** [she] was required to settle the Litigation for a fraction of the damages incurred by her." See, *e.g.*, *Purmal*, 354 Ill. App. 3d at 721 (plaintiff failed to state a claim for legal malpractice where she "never state[d] with specificity how [the attorney's] breach of the attorney-client privilege *** prevented her from collecting the settlement money").

¶ 38       Plaintiff further asserts that confidential documents were divulged to Patrick Splan "while she was engaged in ongoing litigation" with him, without identifying the nature of the litigation, the documents allegedly disclosed, or how Patrick Splan is related to this litigation. We are similarly unable to decipher how Splan is connected to plaintiff being "removed from her home, [and] los[ing] the value of her home and the value of her investment in the Willowbrook

residence in an amount exceeding $1,200,000.00." These "conclusory allegations are insufficient to state a cause of action for legal malpractice." See *id.*

¶ 39                                        Count IV: Fraud

¶ 40        To state a claim for common law fraud, a plaintiff must plead "(1) a false statement of material fact; (2) knowledge or belief by the defendant that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 15. A plaintiff must plead "with sufficient particularity *** what misrepresentations were made, when they were made, who made the misrepresentations, and to whom they were made." *Id.*

¶ 41        Plaintiff alleges that defendants made "false statements" by sending bills for services to the Michael brothers instead of her; taking money from her bank account "without her consent or knowledge"; presenting her with an invoice in March 2011 seeking $80,000.00 in attorney fees including charges for "work unrelated to the representation of her interests"; issuing an attorney's lien in February 2011; and "demand[ing] and attempt[ing] to extort payment of approximately $85,000.00 to continue the representation" in November 2011 (even though defendants were fired in February 2011).

¶ 42        Plaintiff claims she relied on these statements "in determining how she would act," but pleads no facts showing how she relied on the statements or how she subsequently "acted." See, *e.g.*, *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 34 (plaintiff "fails to sufficiently allege fraud because plaintiff's conclusory allegations do not identify misstatements of material fact on which she reasonably relied"). We question how these statements could have been made with the

"specific intent *** to induce [her] to continue on the course of the litigation with Polekatz," where the overbilling, attorney's lien, and "extort[ion]" occurred after defendants had been fired.

¶ 43                    Count V: Negligent Hiring and Supervision

¶ 44        A claim for negligent hiring requires " '(1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury.' " *Doe v. Coe*, 2019 IL 123521, ¶ 66 (quoting *Van Horne v. Muller*, 185 Ill. 2d 299, 311 (1998)). To prove negligent supervision, a supervisor does not need to have "prior notice of a particular unfitness." *Id.* Rather, a plaintiff must show that the defendant had a duty to supervise the harming party; the defendant negligently supervised that party; and the defendant's negligence proximately caused the plaintiff's injuries. *Id.* ¶¶ 52, 61.

¶ 45        We agree with the trial court's finding that plaintiff "failed to sufficiently allege facts, rather than conclusions" relating to her negligent hiring and supervision claims. Plaintiff does not allege facts showing how Lupel and Lupel Weininger knew or should have known about a "particular unfitness" of Karlin. See *Coe*, 2019 IL 123521, ¶ 46 ( plaintiff pled specific facts showing that a simple google search "would have put [defendants] on notice of Coe's sexual interest in children at or before his hire"). Plaintiff's negligent supervision claim is likewise conclusory and not supported by specific facts.

¶ 46                         Count VI: Breach of Contract

¶ 47        Count VI alleges breach of contract "in the alternative to Count I." To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid and enforceable contract, (2) performance by plaintiff, (3) breach of the contract by defendant, and (4) resultant injury to

plaintiff. *Gonzalzles v. American Express Credit Corp.*, 315 Ill. App. 3d 199, 206 (2000). A legal malpractice claim "may be couched in either contract or tort [citation]; however, when grounded in tort, the action arises out of either an express or implied contract for legal services [citation.]." *Majumdar v. Lurie*, 274 Ill. App. 3d 267, 270 (1995). Claims for legal malpractice and breach of contract can be pled in the alternative. *Nettleton v. Stogsdill*, 387 Ill. App. 3d 743, 761 (2008).

¶ 48    Plaintiff alleges that in July 2007, she "entered into a contracted [*sic*] with Defendants to provide legal services ***." She claims that defendants breached this "contract for services" through the same breaches of duty alleged in counts I-III. Because we consider these allegations insufficient to withstand dismissal under section 2-615, plaintiff's breach of contract claim, based on the same allegations, also fails. See *Land v. Greenwood*, 133 Ill. App. 3d 537, 541 (1985) (finding that plaintiff's breach of contract claim was properly dismissed where it was "simply a restatement of the negligence count"). Finally, plaintiff alleges that defendants breached the contract for services by failing to advise her that defendants "accepted benefits, including payment of funds and repair and construction of real property" from George, failing to return her personal papers and documents, failing to disclose and charge a reasonable fee, and failing to properly account for fees in the Polekatz litigation. These conclusory allegations are not supported by specific facts or tied to any identified injury.

¶ 49                                    CONCLUSION

¶ 50    For all of the reasons set forth herein, we affirm the dismissal of plaintiff's "First Amended Complaint at Law" with prejudice.

¶ 51    Affirmed.